**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SHAYNA LATHUS, an individual, *Plaintiff-Appellant*, v. CITY OF HUNTINGTON BEACH, a municipal entity, *Defendant-Appellee*. | No. 21-56197 D.C. No. 8:21-cv-00808-SB-DFM OPINION |

Appeal from the United States District Court
for the Central District of California
Stanley Blumenfeld, Jr., District Judge, Presiding

Argued and Submitted October 17, 2022
Pasadena, California

Filed January 5, 2023

Before: Paul J. Watford and Andrew D. Hurwitz, Circuit
Judges, and Eric N. Vitaliano,[*] District Judge.

Opinion by Judge Hurwitz

---

[*] The Honorable Eric N. Vitaliano, United States District Judge for the Eastern District of New York, sitting by designation.

# SUMMARY[**]

### Civil Rights

Affirming the district court's dismissal of a complaint for failure to state a claim, the panel held that the First Amendment does not protect a volunteer member of a municipal advisory board from dismissal by the city councilperson who appointed her and who is authorized under a city ordinance to remove her.

While serving as a Huntington Beach City Councilperson, Kim Carr appointed plaintiff Shayna Lathus to the city's Citizen Participation Advisory Board ("CPAB"). Each councilperson appoints one member to the seven-person CPAB and may remove that member without cause. *See* Huntington Beach, Cal., Mun. Code §§ 2.97.020, 2.100.100. After being appointed to the CPAB, Lathus was photographed at an immigrants' rights rally standing near individuals whom Carr believed to be "Antifa." After determining that Lathus's public denouncement of Antifa was insufficient, Carr removed Lathus from the CPAB, citing lack of shared values.

The panel held that given the statutory structure and duties of the CPAB, the public could readily infer that a CPAB member's actions and statements while serving in the role reflected the current views and goals of the appointing councilperson. Like each of her fellow board members, Lathus was the "public face" of her appointor. She could therefore be dismissed for lack of political

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

compatibility. The panel further rejected Lathus' compelled speech claim and held that an elected official can compel the public speech of her representative because that speech will be perceived as the elected official's own. Finally, given the structural features of the CPAB, which taken together make its members public surrogates of the appointing councilperson, the district court did not abuse its discretion by denying Lathus leave to amend her complaint.

## COUNSEL

Andrea R. Bird (argued), Manatt Phelps & Phillips LLP, Costa Mesa, California; Jerold D. Friedman, Huntington Beach, California; for Plaintiff-Appellant.

Mark J. Austin (argued), Burke Williams & Sorensen LLP, Santa Ana, California; Stephen A. McEwen, Burke Williams & Sorensen LLP, Irvine, California; Michael J. Vigliotta, Office of the City Attorney, Huntington Beach, California; for Defendant-Appellee.

# OPINION

HURWITZ, Circuit Judge:

The issue for decision is whether the First Amendment protects a volunteer member of a municipal advisory board from dismissal by the city councilperson who appointed her and is authorized under a city ordinance to remove her. Because the advisory board member is the "public face" of the elected official who appointed her to the body, we hold that she "can be fired for purely political reasons." *Hobler v. Brueher*, 325 F.3d 1145, 1150 (9th Cir. 2003) (cleaned up).

## I.

While serving as a Huntington Beach City Councilperson, Kim Carr appointed Shayna Lathus to the city's Citizen Participation Advisory Board ("CPAB") after Lathus lost a 2018 election for a seat on the City Council. Each councilperson appoints one member to the seven-person CPAB and may remove that member without cause. *See* Huntington Beach, Cal., Mun. Code §§ 2.97.020, 2.100.100. The CPAB's mandate is to "provide citizen participation and coordination in the City's planning processes" related to a federal Department of Housing and Urban Development block grant program, with an emphasis on addressing issues faced by "low and moderate income households." *Id.* § 2.97.030. It holds regular open meetings to "assess the needs of the community," "evaluate and prioritize projects," "obtain citizen input," and "provide specific recommendations" to the City Council. *Id.* §§ 2.97.030, 2.97.070.

After being appointed to the CPAB, Lathus was photographed at an immigrants' rights rally standing near individuals whom Carr believed to be "Antifa." Carr then instructed Lathus to write a "public statement on social media denouncing Antifa," and Lathus did so, believing that continuing in her "position on the . . . CPAB depended" on it. Carr deemed the statement insufficient and removed Lathus from the CPAB, stating that "[t]hose that do not immediately denounce hateful, violent groups do not share my values and will not be a part of my team."

Lathus sued the City of Huntington Beach, claiming retaliation for exercising her First Amendment rights to free speech, association, and assembly, and alleging Carr's demand for a public statement amounted to unconstitutionally compelled speech. Lathus sought various remedies, including reinstatement to the CPAB.

The district court dismissed the complaint, holding that under *Blair v. Bethel School District*, 608 F.3d 540, 543 (9th Cir. 2010), "Carr was not politically powerless to disassociate herself from Plaintiff's public actions through a process that authorized appointment and removal in Carr's sole discretion." The court held that "Carr was permitted to consider the political ramifications not only when she decided to appoint Plaintiff but also when she later elected to remove her from the public position."

Lathus timely appealed. We have jurisdiction under 28 U.S.C. § 1291 and review de novo the district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). We accept as true all well-pleaded allegations of material fact in the operative complaint and construe them in favor of Lathus, the non-

moving party.  *See id.*

We agree with the district court that the critical issue is whether Lathus was effectively "a political extension" of Carr on the CPAB.  Concluding that, under this particular statutory scheme, Lathus was effectively Carr's "public face" on the CPAB, we affirm.  *See Hobler*, 325 F.3d at 1150–55.

## II.

In attending the rally, Lathus plainly engaged in activity protected by the First Amendment.  *See Hudson v. Craven*, 403 F.3d 691, 695–96 (9th Cir. 2005).  Citing *Blair*, the district court held that the First Amendment did not, however, insulate her from dismissal that was the outcome of "the regular functioning of the political process."  *Blair*, 608 F.3d at 545.  Although *Blair* is instructive, unlike the district court, we do not find it controlling.

Blair was elected as vice president of a school board by its members.  *See id.* at 542.  After Blair made statements critical of the district superintendent to a reporter, the other board members removed him from the position.  *See id.* at 543.  We found no First Amendment violation in that removal of an elected official "from a titular position . . . by the very people who elected him to the position in the first place," noting that Blair "retained the full range of rights and prerogatives" that otherwise came with being a publicly elected board member.  *Id.* at 544.  We saw "little difference between what the Board's internal vote against Blair accomplished and what voters in a general public election might do if they too were disaffected by Blair's advocacy."  *Id.* at 545.  And, we viewed Blair's fellow board members as exercising their own "right to replace Blair with someone who, in their view, represented the majority view of the

Board." *Id.* at 546.

This case presents a different scenario. As we have noted, our statement in *Blair* that "more is fair in electoral politics than in other contexts," *id.* at 544, is best understood as pertaining to the "retaliatory acts of elected officials against their own," *Boquist v. Courtney*, 32 F.4th 764, 776 (9th Cir. 2022) (cleaned up). Lathus was not an elected official, but rather an appointed volunteer in public service. Her volunteer status does not by itself remove First Amendment protection. *See Hyland v. Wonder*, 972 F.2d 1129, 1135 (9th Cir. 1992). Moreover, in contrast to Blair, Lathus neither gained nor lost her appointment through a vote by her fellow board members, nor was her dismissal simply the result of an "internal political leadership election." *Blair*, 608 F.3d at 544.

### III.

But, even if *Blair* does not control the day, it makes clear that the First Amendment rights of government officials are not absolute. It is settled, for example, that an appointed public official can be removed for engaging in otherwise protected First Amendment activity if "political affiliation is an appropriate requirement for the effective performance of the public office involved." *Hobler*, 325 F.3d at 1154. The Supreme Court so recognized in *Elrod v. Burns*, in which the three-justice plurality held that employees in "policymaking positions" may be dismissed for engaging in activities protected by the First Amendment so that "policies which the electorate has sanctioned are effectively implemented."

427 U.S. 347, 372 (1976).[1] The Court later clarified that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel*, 445 U.S. 507, 518 (1980).

In reviewing dismissals under the *Elrod–Branti* framework, we have sometimes analyzed whether a position is "policymaking," *Bardzik v. County of Orange*, 635 F.3d 1138, 1144 (9th Cir. 2011), or "confidential," *Hobler*, 325 F.3d at 1151. But *Branti* makes plain that "a position may be appropriately considered political even though it is neither confidential nor policymaking in character." 445 U.S. at 518. We must therefore determine whether "commonality of political purpose" with Carr is an appropriate requirement for Lathus's service on the CPAB. *Walker v. City of Lakewood*, 272 F.3d 1114, 1132 (9th Cir. 2001) (cleaned up); *see also Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1332 (9th Cir. 1997) (stating that the relevant inquiry is whether "political considerations are appropriate requirements for the effective performance of the job") (cleaned up).

"[W]here a statute establishes a position, the statute is likely to provide the best foundation for classifying it for . . . First Amendment purposes." *Hagan v. Quinn*, 867 F.3d 816, 827 (7th Cir. 2017); *see also Underwood v. Harkins*, 698

---

[1] Two justices concurred, stating that a "nonpolicymaking, nonconfidential government employee" cannot "be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs." *Elrod*, 427 U.S. at 375 (Stewart, J., concurring).

F.3d 1335, 1344 (11th Cir. 2012) ("[W]e look at the position in the abstract and at what state or local law allows a person in that position to do, and not at a snapshot of the position as it is being carried out by a given person at a given point in time under a given elected official."). The CPAB consists of seven members, each appointed by a separate councilperson, Huntington Beach, Cal., Mun. Code § 2.97.020, who can also remove that member without cause, *see id.* § 2.100.100. Because each member of the CPAB, an entity that advises on matters of policy and solicits public feedback, is appointed and removable by a particular councilperson, board members speak to "the public and to other policymakers on behalf of the official" who appointed them, *Hobler*, 325 F.3d at 1155, a factor that indicates "responsiveness to partisan politics and political leaders," *Fazio*, 125 F.3d at 1334 n.5 (cleaned up). In other words, because the public could readily infer that a CPAB member's actions and statements while serving in the role reflect the current views and goals of the appointing councilperson, Lathus was Carr's "public face" on the board, and the public was entitled to assume that she spoke on Carr's behalf. *See Hobler*, 325 F.3d at 1154–55; *see also Walker*, 272 F.3d at 1133 (concluding that a contractor was a policymaker despite the absence of legal authority to speak on behalf of a city because of the public perception that it would have official authority as the "sole agency in the City addressing fair housing concerns").

Moreover, "the provision of housing to low and middle income city residents is a vital political issue," *Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 243 (1st Cir. 1986) (en banc), and the CPAB is designed to influence policy decisions by the Council on such programs, *see Fazio*, 125 F.3d at 1334 n.5. The CPAB is a conduit between the

community and City Council; its directive is to "assess the needs of the community," "evaluate and prioritize projects," "obtain citizen input," and "provide specific recommendations" to the City Council. Huntington Beach, Cal., Mun. Code § 2.97.030. It conducts "regular monthly meetings" open to the public. *Id.* § 2.97.070. Because a CPAB member is thus "an adviser [who] formulates plans for the implementation of broad goals," *Elrod*, 427 U.S. at 368, a councilperson is entitled to an appointee who represents her political outlook and priorities.

This case thus presents a different situation than those in which we have held that retaliation against officeholders for their exercise of First Amendment rights is forbidden. For instance, we have found that First Amendment protections extend to those who "did *not* have authority to speak to the media without prior approval of higher-ranking officials," or did not "formulate or substantially influence plans to implement the broad goals" of the appointing authority. *Hunt v. County of Orange*, 672 F.3d 606, 610, 614 (9th Cir. 2012). In contrast, Lathus's role on the CPAB required her to speak to the public and plan low- and middle-income housing and development. *Cf. DiRuzza v. County of Tehama*, 206 F.3d 1304, 1310–11 (9th Cir. 2000) (reversing grant of summary judgment to defendants because deputy sheriffs "appear to be the lowest ranking peace officers in the department" and plaintiff was "limited to her prescribed custodial duties" in a jail); *Thomas v. Carpenter*, 881 F.2d 828, 832 (9th Cir. 1989) (reversing dismissal of the complaint of a sheriff's lieutenant because tasks did "not involve the formulation of departmental policy").

Given the statutory structure and duties of the CPAB, Lathus, like each of her fellow board members, was the "public face" of her appointor. *Hobler*, 325 F.3d at 1154.

Lathus could plainly "undermine [Carr's] credibility and goals," and therefore could be dismissed for lack of political compatibility. *Bardzik*, 635 F.3d at 1149. Cases from our sister Circuits reach the same conclusion. *See, e.g.*, *Garza v. Escobar*, 972 F.3d 721, 731–32 (5th Cir. 2020) (affirming dismissal of the political retaliation claims of a Crime Victim Unit Coordinator because she "represented the DA's office to crime victims" and to "other members of the law enforcement community"); *Hagan*, 867 F.3d at 828 (holding that appointed workers' compensation arbitrators can be dismissed as "the face of the administration"); *Walsh v. Heilmann*, 472 F.3d 504, 505–06 (7th Cir. 2006) (upholding dismissal of administrative hearing officer because he decided local vehicular, housing, and zoning matters on which "political careers may turn" and elected officials "may insist that the holders of the delegated power be reliable implementers" of their agendas); *Hoard v. Sizemore*, 198 F.3d 205, 214–15 (6th Cir. 1999) (holding that road foremen are "inherently political" because of "the central importance of road maintenance in a rural county" and because they "may be called upon to serve as the executive's liaison with the public as far as road conditions are concerned"); *Flynn v. City of Boston*, 140 F.3d 42, 46 (1st Cir. 1998) (noting "it is enough that the official be *involved* in policy, even if only as an adviser, implementer, or spokesperson") (cleaned up); *Brown v. Trench*, 787 F.2d 167, 170 (3d Cir. 1986) (finding no First Amendment violation because a dismissed county employee's "principal duty was to act as spokesman for the Commissioners and help promote county projects").[2]

---

[2] We need not separately balance Lathus's interests "in commenting upon matters of public concern" against the City's interest "in promoting

IV.

Our analysis of Lathus's retaliation claim also dictates the outcome of her compelled speech claim. *Cf. Walker*, 272 F.3d at 1131 (noting that "an employee's status as a policymaking or confidential employee is dispositive of any First Amendment retaliation claim") (cleaned up). The central "constitutional issue" in compelled speech cases is whether the "State forced one speaker to host another speaker's speech." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 140 S. Ct. 2082, 2088 (2020). Lathus's complaint asserted that a "coerced" statement about her rally attendance was "a condition of . . . retaining her status." But an elected official can compel the public speech of her representative because that speech will be perceived as the elected official's own. Just as Carr was entitled to political loyalty from her appointee to the CPAB, she was also entitled to compel that appointee to espouse her political philosophy.

V.

The remaining issue is whether the district court abused its discretion in denying Lathus leave to amend her complaint. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). Although leave to amend should be given freely, *see* Fed. R. Civ. P. 15(a), denying leave is not an abuse of discretion if "it is clear that granting leave to amend would have been futile," *Thinket Ink*

---

the efficiency of the public services it performs through its employees," *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968), because "where the *Branti* exception applies the employee can be fired for purely political reasons without any *Pickering* balancing," *Hobler*, 325 F.3d at 1150 (cleaned up).

*Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004). That is the case here.

Three structural features of the CPAB, taken together, legally make its members public surrogates of the appointing councilperson. First, each councilperson appoints one member to the board. Second, that councilperson can remove her appointee at her discretion. Third, the CPAB's purpose is to advise about public policy—its legal duty is to interface with the City Council's constituents and make recommendations concerning an important government function. Under these circumstances, which flow directly from the municipal code, an elected official is allowed to "distance" herself from an appointee who might be a political liability. *Blair*, 608 F.3d at 545. That conclusion would not be altered by an amendment to Lathus's complaint. Even if Lathus were to assert in an amended pleading that her actual duties varied from the role of the CPAB as described in the municipal code, "the relevant focus of analysis is the inherent duties of the position in question, not the work actually performed by the person who happens to occupy the office." *Biggs v. Best, Best & Krieger*, 189 F.3d 989, 997 (9th Cir. 1999) (cleaned up).

**AFFIRMED.**